CLARIANT CORPORATION, Defendant/Counterclaim Plaintiff Below, Appellant/Cross Appellee,

v.

The **HARFORD MUTUAL INSURANCE COMPANY and Mill–Pond Properties, Inc.**, Plaintiffs/Counterclaim Defendants Below, Appellees/Cross–Appellants.

No. 577, 2009.

Supreme Court of Delaware.

Submitted: Nov. 10, 2010.
Decided: Jan. 5, 2011.

Kevin J. Connors, Esquire (argued), Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware, for Appellant/Cross Appellee.

Mary E. Sherlock, Esquire (argued), Weber, Gallagher, Simpson, Stapleton, Fires & Newby, LLP, Dover, Delaware, for Appellees/Cross Appellants.

Before BERGER, JACOBS and RIDGELY, Justices.

BERGER, Justice:

In this appeal, we consider whether, under the terms of an industrial building lease (the Lease), the tenant is obligated to defend a tort claim against the landlord. After landlord filed a declaratory judgment action to determine its rights, the parties entered into a settlement agreement and dismissed the action. Eight months later, landlord filed a second declaratory judgment action because tenant stopped defending the underlying lawsuit. The Superior Court held that tenant had a duty to defend, and that the general release, executed as part of the settlement of the first declaratory judgment action, did not relieve tenant of that duty. We affirm, but on different grounds.

**Factual and Procedural Background**

Clariant Corporation operates an industrial plant in Milford, Delaware. It leases the premises from Mill–Pond Properties, Inc. In 2003, Rocky Stayton, a Clariant employee, suffered serious injuries when a pelletizer machine fell on him. Stayton filed a personal injury action against Mill–Pond and its President, Joseph Warnell, among others.[1] Mill–Pond filed a third-party complaint against Clariant seeking indemnification under the terms of the Lease. Mill–Pond's insurer, The Harford Mutual Insurance Company, tendered the defense of the *Stayton* action to Clariant, but no attorney appeared on Mill–Pond's behalf.

In March 2007, Harford and Mill–Pond (collectively, Mill–Pond) filed its first declaratory judgment action against Clariant and its insurer, American Home Assurance Company (collectively, Clariant). Mill–Pond sought a declaration that Clariant had breached the Lease by failing to defend the *Stayton* action. In addition, Mill–Pond sought damages for all defense costs, including attorneys' fees. In January 2008, the parties resolved the first declaratory judgment action. They stipulated to a dismissal with prejudice; Clariant paid Mill–Pond $6,500; and the parties executed a Settlement Agreement and General Release (the Release). The Release provides, in relevant part, that its scope includes the following:

> In consideration of the sum of SIX THOUSAND FIVE HUNDRED DOLLARS ($6,500.00), receipt of which is hereby acknowledged, [Mill–Pond] release(s) [Clariant] ... from all claims, liability, ... causes of action, judgments, and executions, past, present, and future, known or unknown, asserted or unasserted ..., especially including all claims for attorneys fees, costs and interest incurred and arising out of the defense of Mill–Pond Properties, Inc. in the case of *Stayton v. Cumberland Engineering Company, et al.*, Del.Super.

---

1. *Stayton v. Cumberland Engineering,* C.A. No. 05C–05–042, Del.Super. (*Stayton* ).

05C–05–042 WJW ... and all claims alleged in [Mill–Pond's] Complaint for Declaratory Judgment.... [2]

Shortly after the first declaratory judgment action was filed, Clariant began paying separate counsel to represent Mill–Pond in the *Stayton* action. In March 2008, Stayton amended his complaint by adding new counts alleging, among other things, that Mill–Pond's negligence in pouring the concrete floor created the depression that caused the pelletizer to tip over on Stayton. Clariant viewed the amended complaint as having changed Stayton's theory of liability. Accordingly, Clariant notified Mill–Pond that it would not continue to assume Mill–Pond's defense:

> Prior to the motion to amend and production of the expert report, Clariant Corporation agreed to assume the defense of Mill–Pond Industries, Inc. (sic) and provide indemnity pursuant to Section 15(a) of the Industrial Building Lease based upon the understanding that plaintiff was alleging that a failure to repair a (sic) inspect, maintain, and repair an ordinary crack in the floor had caused or contributed to the injury to the plaintiff.
>
> However, it now appears that the plaintiff is alleging that the crack was due to a latent defect due to a structural and/or construction deficiency in the concrete floor and that this latent defect allegedly caused a depression which contributed to the injury to the plaintiff.
>
> \* \* \*
>
> Based upon these recent developments ... we ask that Mill–Pond Properties, Inc. release Clariant Corporation from the indemnity obligation that it assumed based upon an earlier under-

standing of the nature of the plaintiff's claims.... [3]

Mill–Pond did not respond to Clariant's letter. Instead, it filed a second declaratory judgment action, again seeking a declaration that Clariant breached its contractual obligation to defend Mill–Pond in the *Stayton* case. This time, there was no settlement. After expedited discovery, both parties filed motions for summary judgment. As it relates to this appeal, the Superior Court held that: 1) Clariant must defend and indemnify Mill–Pond in the *Stayton* action under Section 15(a) of the Lease; and 2) Clariant's refusal to defend Mill–Pond did not constitute bad faith and did not breach the implied covenant of good faith and fair dealing. Clariant appealed, and Mill–Pond cross-appealed.

On appeal, this Court decided that a potentially dispositive issue had not been addressed by the Superior Court—whether the Release extinguished any obligation Clariant may have had to defend the *Stayton* action. Accordingly, by Order dated April 13, 2010, we remanded this matter to the Superior Court for it to determine, in the first instance, the enforceability and scope of the Release. After considering additional evidence, the Superior Court decided that the Release is valid and enforceable, but ambiguous. The Superior Court then concluded that the Release does not relieve Clariant of its obligation to defend or indemnify Mill–Pond.

## Discussion

■ We begin our analysis by considering the effect of the Release, whose language is broad. It purports to release Clariant (including stockholders, agents, servants, attorneys, heirs and assigns, and insurers) from:

---

**2.** Appellant's Appendix, A–43.

**3.** Appellant's Appendix, A 131–32 (March 5, 2008 letter from W. Clark Jordan).

all claims, liability, demands, attorneys fees, costs, ... charges, expenses, actions, causes of action, judgments, executions, past, present, and future, known or unknown, asserted or unasserted, whether or not ascertainable at the time of execution of this ... Release, especially including all claims for attorneys fees, costs and interest incurred and arising out of the defense of Mill–Pond Properties, Inc. in the [*Stayton* action] and all claims alleged in [Mill–Pond's] Complaint for Declaratory Judgment.... [4]

The trial court decided that the Release is ambiguous because the Release does not, by its terms, address whether Clariant has an ongoing duty to defend the *Stayton* action.

We disagree. The Release expressly releases Clariant from all claims, including future claims, presently unasserted, "arising out of the defense of Mill–Pond Properties, Inc. in the [*Stayton* action] and all claims alleged in [the declaratory judgment action]." [5] The declaratory judgment action alleges that, under the terms of the Lease, Clariant is obligated to "defend, indemnify and hold harmless Mill–Pond Properties, Inc. in the underlying *Stayton* case." [6] Thus, the plain language of the Release precludes Mill–Pond from alleging in a future claim that Clariant is obligated to defend the *Stayton* action.[7]

The problem, however, is that neither party seems to have focused on what they were signing.[8] Even before the Release was executed, Clariant retained separate counsel to defend Mill–Pond in the *Stayton* action. And, for two months after the Release was executed, Clariant continued to provide Mill–Pond's defense. It was not until March 2008, after Stayton had moved to amend his complaint, that Clariant stopped defending Mill–Pond. Clariant wrote to Mill–Pond, explaining that the new theory alleged in the amended *Stayton* complaint was a claim for which Mill–Pond was responsible under Section 15(b) of the Lease. As a result, according to Clariant, the tables had turned—Clariant was relieved of its responsibility to defend and indemnify Mill–Pond, and Mill–Pond was now responsible to defend and indemnify Clariant.

Significantly, Clariant's letter never took the position that the Release extinguished its obligation to defend. At oral argument, Clariant confirmed that it "voluntarily" continued to pay for Mill–Pond's defense until Stayton amended his complaint; and that Clariant stopped doing so because the amended complaint "drastically" changed the nature of the underlying claims. In short, the record establishes that the language of the Release, although clear as can be, did not reflect the parties' agreement. Both Clariant and Mill–Pond understood the Release to extinguish only claims for attorneys' fees or other costs incurred by Mill–Pond before Clariant assumed Mill–Pond's defense of the *Stayton* action.

In other words, the parties labored under a mutual mistake as to the scope of the Release.[9] The record establishes, by clear

4. Appellant's Appendix, A–43.

5. *Ibid.*

6. Appellant's Appendix, A–40.

7. *Corporate Property Assoc. v. Hallwood Group Inc.,* 817 A.2d 777, 779 (Del.2003).

8. One could surmise that Mill–Pond belatedly realized the scope of the Release. It refused to sign the Release, and Clariant was forced to ask the Court for an Order deeming the Release fully executed.

9. *Cf. Reason v. Lewis,* 260 A.2d 708, 709 (Del. 1969) (Release may be avoided based on mu-

and convincing evidence, that neither Mill–Pond nor Clariant understood the Release to extinguish future claims by Mill–Pond for failure to defend the *Stayton* action. Mill–Pond provided undisputed evidence to that effect, and Clariant confirmed Mill–Pond's understanding by defending the *Stayton* action after the Release was executed, and in Clariant's briefing and arguments to the Court. Essentially, the parties reformed the Release without seeking that relief from the courts.[10]

In sum, we conclude that the Release is unambiguous as a matter of law, but was subject to reformation to conform to the parties' true, and clearly evidenced, contractual intent. Accordingly, we agree with the trial court's determination that the Release does not extinguish Mill–Pond's claim.

■ Clariant argues alternatively that it has no duty to defend Mill–Pond under the doctrine of *res judicata*. It contends that the second declaratory judgment action duplicates Mill–Pond's claims in the first declaratory judgment action. Because that action was dismissed with prejudice, Clariant argues that Mill–Pond's current claims are barred. We disagree. *Res judicata* bars subsequent claims only if the following five requirements are satisfied: 1) the first court had subject matter and personal jurisdiction; 2) the parties in the two actions are the same or in privity with each other; 3) the issues decided in the first action must be the same as those raised in the second; 4) the prior action was decided adversely to the plaintiff in

the current action; and 5) the prior action was finally decided.[11]

The trial court held that *res judicata* does not bar Mill–Pond's second declaratory judgment action because the claims in the underlying *Stayton* action had changed. Therefore, the court held that the claims and issues in the two actions were not the same. The *Stayton* amended complaint supports that determination. In addition, we note that, under the unusual facts of this case, the prior action was not decided adversely to Mill–Pond for purposes of *res judicata*. The first declaratory judgment action was resolved in Mill–Pond's favor in that Clariant first paid Mill–Pond for the costs incurred while Mill–Pond was defending the *Stayton* action, and then took over the defense for Mill–Pond. Had the parties executed an accurately worded Settlement Agreement and Release, Mill–Pond would have been able to file an action to enforce the settlement instead of the second declaratory judgment action, and there would be no *res judicata* issue. In any event, we affirm the trial court's holding that the second declaratory judgment action is not barred by *res judicata*.

■ Clariant's remaining claims on appeal, and Mill–Pond's claim on cross-appeal, were considered in some detail by the trial court. In a decision issued in both this matter and in the underlying *Stayton* action, the trial court analyzed the terms of the parties' Lease, the applicability of its indemnification provisions, and Clariant's lack of bad faith.[12] We agree with

tual mistake as to the existence or extent of personal injuries.)

10. See: *Croxton v. Chen*, 1998 WL 515346 at \*2 (Del.Supr.) (Formal document may be reformed to reflect true intent of the parties on clear and convincing proof of the parties' mutual mistake.)

11. *Bailey v. City of Wilmington*, 766 A.2d 477, 481 (Del.2001).

12. See: *Stayton v. Cumberland Engineering*, C.A. No. 05C–05–042, Del.Super. (Order December 30, 2008); *Harford Mutual Ins. Co & Mill–Pond Properties, Inc. v. Clariant Corpora-*

the Superior Court's conclusions and affirm the remaining claims and cross-claims on the basis the Superior Court's June 25, 2009 Order in this action and its December 30, 2008 Order in the *Stayton* action.[13]

## Conclusion

Based on the foregoing, the judgments of the Superior Court are affirmed.

*tion & American Home Assurance Co.,* C.A. No. 08C–09–010 WLW (Order June 25, 2009).

**13.** The Superior Court never addressed Clariant's argument that Harford had the primary obligation to defend its insured, Mill–Pond. Because Clariant did not seek reargument on that issue, however, Clariant waived its claim. See: Supr. Ct. R. 8.