# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

HELEN GARNETT,                          )
                                        )
                 Plaintiff,             )
                                        )
        v.                              )    C.A. No.: N24C-01-138 SPL
                                        )
NAOMI COTE,                             )
                                        )
                 Defendant.             )

## ORDER

This 7th day of January 2025, upon consideration of Defendant Naomi Cote's ("Cote") Motion for Summary Judgment,[1] Plaintiff Helen Garnett's ("Garnett") response,[2] and the parties' oral arguments,[3] it appears to the Court that:

## BACKGROUND

1.      Garnett alleges that on January 19, 2022, Cote struck her motor vehicle "suddenly and without warning" causing Garnett "to sustain serious injuries."[4]  That same night, Garnett presented to the emergency room with complaints of low back pain.[5]  Medical staff diagnosed Garnett with a lumbar strain, ordered Garnett to seek

---

[1] Docket Item ("D.I.") 15.

[2] D.I. 16.

[3] D.I. 17.

[4] D.I. 1 ("Compl.") ¶ 3.

[5] Def. Ex. C.

follow up treatment from her doctor within three to five days, and discharged her that night.[6] Garnett followed up with her doctor a month later on February 22, 2022.[7]

2. On January 25, 2022, six days after the collision, Cote's automobile insurer contacted Garnett with an offer to pay her $1,160 and "all reasonable and necessary expenses…not to exceed $7,500 incurred" for other medical treatment.[8] In return, Garnett agreed to,

> Forever discharge[] NAOMI COTE and any and all other persons, firms, or corporations liable or who might be claimed to be liable, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, both to person and property, and particularly on account of all injuries, known and unknown, sustained by (Named Beneficiary) HELEN GARNETT, which have resulted or may in the future develop as a result of an accident which occurred on or about the 19th day of January, 2022 at or near GLENWOOD AVE, SMYRNA, DE 19977 … It is further agreed that all parties to this instrument have carefully read the contents of this Agreement and Release and the signatures below are the voluntary and free act of each.[9]

Garnett signed the release agreement later the same day.[10]

---

[6] Def. Ex. C.

[7] Def. Ex. D.

[8] Def. Ex. B.

[9] *Id.*

[10] *Id.*

3. On January 18, 2024, Garnett filed a complaint alleging Cote's negligence proximately caused her physical and emotional injuries.[11] Cote answered the complaint,[12] and on October 21, 2024, moved for summary judgment.[13]

4. Cote contends Garnett is barred from filing this action because she executed a valid and enforceable release that discharged Cote from any additional liability stemming from the parties' motor vehicle collision.[14] Garnett contends a mutual mistake existed between the parties that vitiates the release.[15]

## STANDARD OF REVIEW

5. On October 21, 2024, Cote moved, "for judgment on the pleadings or summary judgment."[16] Superior Court Civil Rule 12(c) governs motions for judgment on the pleadings.[17] Rule 12(c) states that,

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable

---

[11] Compl. ¶ 5.

[12] D.I. 5.

[13] D.I. 15.

[14] Def. Mot. ¶¶ 6-7.

[15] Pl. Resp. ¶ 1.

[16] *See* Def. Mot.

[17] *Gillespie v. Carper*, 2024 WL 4709937, at *2 (Del. Super. Ct. Nov. 7, 2024).

opportunity to present all material made pertinent to such a motion by Rule 56.[18]

Both Garnett and Cote presented, and the Court has considered, matters outside the pleadings. Notably, the parties rely on the release agreement and relevant medical records.[19] On November 11, 2024, Garnett, "answer[ed] [Cote's] motion for summary judgment."[20] On December 19, 2024, the Court heard argument from the parties on the motion.[21] Cote's motion, therefore, "shall be treated as one for summary judgment."[22]

6. Under Superior Court Civil Rule 56, summary judgment will be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[23] On a motion for summary judgment, this Court "(i) construes the record in the light most favorable to the non-moving party; (ii) detects, but does not decide, genuine

---

[18] Super. Ct. Civ. R. 12(c).

[19] *See* D.I. 15, Def. Ex. A-D; D.I. 16, Pl. Ex. A-B.

[20] *See* Pl. Resp.

[21] D.I. 17.

[22] Super. Ct. Civ. R. 12(c).

[23] Super. Ct. Civ. R. 56(c).

issues of material fact; and (iii) denies the motion if a material fact is in dispute."[24] Summary judgment will not be granted where there exists a material fact in dispute or if it "seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[25]

## ANALYSIS

7.    A release is a mechanism parties use to minimize the risk involved in litigation.[26] Because litigation inherently presents risk, "[r]eleases are executed to resolve the claims the parties know about as well as those that are unknown or uncertain."[27] Delaware Courts generally uphold executed releases, "and will only set aside a clear and unambiguous release where it was the product of fraud, duress, coercion, or mutual mistake."[28] Here, Garnett argues her executed release should be set aside because a mutual mistake of fact existed when she signed the release.[29]

8.    To establish a mutual mistake of fact, Garnett must show, "by clear and convincing evidence that (1) both parties were mistaken as to a basic assumption,

---

[24] *US Dominion, Inc. v. Fox News Network, LLC*, 2023 WL 2730567, at *17 (Del. Super. Ct. Mar. 31, 2023) (quoting *CVR Refin., LP v. XL Specialty Ins. Co.*, 2021 WL 5492671, at *8 (Del. Super. Ct. Nov. 23, 2021) (cleaned up)).

[25] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69 (Del. 1962).

[26] *E.I. DuPont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 462 (Del. 1999).

[27] *Hicks v. Sparks*, 2014 WL 1233698, at *2 (Del. Mar. 25, 2014).

[28] *Id.*

[29] Pl. Resp.

(2) the mistake materially affects the agreed-upon exchange of performances, and (3) the party adversely affected did not assume the risk of the mistake."[30] In assessing whether a mutual mistake exists, the Court considers the relevant circumstances present at the time of contract formation.[31] The mutual mistake "must relate to a past or present fact material to the contract and not to an opinion respecting future conditions as a result of present facts."[32] Accordingly, a mistake regarding "the future unknowable effect of existing facts, … or a mistake as to the future effect of a personal injury" is not grounds for voiding a release.[33]

9. Cote contends that because, "mutuality of mistake exists only where neither the claimant nor the insurance carrier is aware of the existence of personal injuries," there exists no mutual mistake rendering Garnett's executed release unenforceable.[34] Unless Garnett's injuries are "materially different from the parties' expectations at the time the release was signed," the executed release bars her suit for subsequently discovered injuries.[35] To invalidate Garnett's executed release,

---

[30] *Hicks*, 2014 WL 1233698 at *2.

[31] *Hicks*, 2014 WL 1233698 at *2.

[32] *Alvarez v. Castellon*, 55 A.3d 352, 354 (Del. 2012) (quoting *Tatman v. Philadelphia, Baltimore & Washington R.R. Co.*, 85 A. 716, 718 (Del. Ch. 1913)).

[33] *Id*.

[34] Def. Mot. ¶ 8. (citing *Alston v. Alexander*, 2011 WL 1225555, at *4 (Del. Super. Ct. Mar. 29, 2011)).

[35] *Hicks*, 2014 WL 1233698 at *2.

both she and State Farm must have been mistaken "as to the presence or extent of [Garnett's] injuries at the time they executed the release."[36] Thus, the release will not be invalidated if Garnett knew that, "an indicia of injuries exist[ed] at the time [she] signed the release."[37] This is true regardless of whether Garnett was aware of "the exact degree of injuries with medical certainty."[38] Knowledge of an existing injury precludes a finding of mutual mistake to the extent it would invalidate a release.[39]

10. Garnett responds that this Court's decision in *Webb v. Dickerson* compels denial of Cote's motion.[40] In *Webb*, the plaintiff executed a release less than twenty-four hours after the motor vehicle accident during a chance encounter with an insurance adjuster outside the salvage yard where his damaged car was stored.[41] Because, at the time the release was executed, neither the plaintiff nor the insurance adjuster knew that the plaintiff sustained a disc injury and nerve damage, this Court found there was a genuine issue of material fact concerning whether a

---

[36] *Id.*

[37] *Hicks*, 2014 WL 1233698 at *2.

[38] *Id.*

[39] *Id.*

[40] 2002 WL 388121 (Del. Super. Ct. Mar. 11, 2002).

[41] *Id.* at *2.

mutual mistake existed.[42]  Garnett also relies on *Reason v. Lewis*, where the Court invalidated an executed release because, "both the plaintiff and the insurance adjuster thought that the plaintiff had been discharged from all further medical treatment or was about to be discharged."[43]  But here, because the hospital ordered Garnett to follow up with her doctor within three to five days, Garnett knew she had not been discharged from further medical treatment at the time she signed the release.[44]

11.    On January 19, 2022, hours after the motor vehicle collision, Garnett presented to the hospital with complaints of low back pain.[45]  The examining physician opined that Garnett suffered a lumbar strain and recommended Garnett seek further treatment within three to five days.[46]  Garnett did not consult her doctor before signing the release six days later.[47]  Based on her visit to the hospital, her diagnosis after the accident, and the hospital's recommendation for further treatment, Garnett knew that, "an indicia of injuries exist[ed] at the time [she] signed

---

[42] *Id*. at *4-7.

[43] 260 A.2d 708, 709 (Del. 1969).

[44] Def. Ex. C.

[45] D.I. 15, Def. Ex. C.

[46] Def. Ex. C.

[47] Def. Ex. B.

the release."[48]  Such knowledge precludes a finding of mutual mistake that would

invalidate the release.[49]

12.     And Garnett's injuries alleged in her complaint are not so "materially

different from the parties' expectations at the time the release was signed" such that

the release should be invalidated.[50]  In *Hicks*, before the plaintiff signed the release,

she was diagnosed with a "cervical sprain" after presenting to a physician with neck

pain.[51]  The plaintiff then signed the release, and months later, she needed "surgery

for a herniated disc."[52]  Plaintiff contended that because her pre and post-release

injuries were materially different, the executed release should be invalidated for

mutual mistake.[53]  The Superior Court did not find a mutual mistake to exist and

granted the defendant summary judgment.[54]  The Delaware Supreme Court affirmed

this Court's decision on appeal, and commented:

> Although [Plaintiff] may have been mistaken as to the future effect of
> her injury, both parties were aware that [Plaintiff] injured her neck in
> the accident.  This can reasonably be considered an "indicia of injuries"
> existing at the time of the Release.  [Plaintiff] had ample opportunity to
> consult additional physicians and obtain further diagnoses to discover
> the herniated disc.  Her later diagnosis is not a materially different fact

---

[48] *Hicks*, 2014 WL 1233698 at *2.

[49] *Id*.

[50] *Hicks*, 2014 WL 1233698, at *3.

[51] *Id*.

[52] *Id*.

[53] *Id*. at *2.

[54] *Id*. at *1.

but an injury of which [Plaintiff] had some awareness. Therefore, there was no mutual mistake.

13. Here, as in *Hicks*, at the time Garnett signed the release, she had been treated for, and diagnosed with, a back injury stemming from Cote's collision into her vehicle.[55] Garnett's later diagnoses were materially similar to the injury she presented with on January 19, 2022, and Garnett's decision to execute the release prior to seeking additional medical evaluation must not be overlooked. Whether Garnett mistook "the future effect of [her] personal injury" does not alter the outcome; that misapprehension is not grounds for rescinding a release.[56]

## CONCLUSION

14. Garnett's validly executed release was not the product of mutual mistake and, thus, her complaint against Cote may not stand. No genuine issue of material fact exists as to the existence or operation of the release, and Cote is entitled to judgment as a matter of law. Accordingly, Cote's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

_____
Sean P. Lugg, Judge

---

[55] Def. Ex. C.

[56] *Alvarez*, 55 A.3d at 354 (quoting *Tatman*, 85 A. at 718).